**Barbara M. McKINNEY, Plaintiff,**

v.

**EASTMAN KODAK COMPANY, Defendant.**

**No. 96–CV–6493L.**

United States District Court, W.D. New York.

Aug. 25, 1997.

Todd J.W. Wisner, Wisner Law Firm. P.C., Rochester, NY, for plaintiff.

Mark A. Gerard, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Barbara M. McKinney, commenced this action by filing a pro se complaint on October 29, 1996. Using a form complaint for civil rights claims, plaintiff typed an "X" on the line stating that the action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She did not check the line for claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* However, where the form stated, "Defendant's conduct is discriminatory with respect to which of the following (*check all that apply*)," plaintiff checked only the line for "Age," and gave her date of birth as "10/17/50."

Subsequent to filing her complaint, plaintiff retained an attorney. She now moves

pursuant to Rule 15 of the Federal Rules of Civil Procedure for leave to amend her complaint. The proposed amended complaint asserts causes of action of age discrimination under the ADEA and the New York State Human Rights Law ("HRL"), N.Y. Exec. L. § 296 (based on theories of both disparate treatment and disparate impact), sex discrimination under Title VII, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and a claim of retaliation under the ADEA. Defendant Eastman Kodak Co. ("Kodak") opposes the motion on the ground that the proposed amendment would be futile and would prejudice Kodak.

## BACKGROUND

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 23, 1996. Although she checked the boxes for sex discrimination, age discrimination and retaliation, her statement of facts said nothing about sex discrimination. Her entire factual allegations consisted only of the following:

I began working for the above-named Respondent in about November, 1981, with my most recent title being that of Product Coordinator. Respondent attempted to replace me with a 21 year old employee. When the employee declined my position, she was given a promotion to a higher level than my job. In May, 1995, I complained to management of the disparate treatment, and was laid off on October 9, 1995. I believe I was not given a promotion because of my age/45 (date of birth: 10/17/50) in willful violation of the Age Discrimination in Employment Act, and was discharged in retaliation for having complained about employment discrimination to management.

On July 15, 1996, the EEOC sent plaintiff a letter advising her that it was investigating her claim and that it would be issuing its determination. The letter also stated, "You alleged that you were discriminated against in violation of the Age Discrimination in Employment Act, as amended, in that you were discharged during a reduction in force because of your age and in retaliation for protesting discrimination." Plaintiff never sought to amend the EEOC claim or to notify the EEOC that it had misconstrued her claim. On July 31, 1996, the EEOC issued a right-to-sue letter setting forth its finding that it was unable to conclude that a violation had occurred.

As stated, plaintiff commenced this action on October 29, 1996. In addition to checking the boxes on the complaint form for Title VII and age discrimination (but not the ADEA), plaintiff provided a statement of her alleged facts. She stated, "I claim the charge of 'retaliation' against me for going to management and Human Resources in complaint of intentional unjust treatment by my supervisor, Thomas Batz." She stated that Batz had displayed favoritism toward another employee, Lisa Cairns, despite plaintiff's complaints to Batz that Cairns's mistakes on the job were adding to plaintiff's workload and were costing Kodak money. She alleged that in early 1994 she began complaining to higher management about the situation.

Plaintiff also alleged that in December 1993, her husband suffered a stroke, and that she had to take a lot of time off from work to help him. She alleged that she used vacation time for these absences "because Mr. Batz was unaware of the Family Medical Leave Act," and that when she complained about this to Human Resources, Batz "got very annoyed with [her] and started treating [her] even more shabily [sic]." She stated that when she returned to work in August 1994 after her husband's death from cancer, Batz said to her that "it was really too bad that [plaintiff] had to miss so much work," and that because of her absence, Batz had been forced to give Cairns a promotion that would otherwise have gone to plaintiff.

The original complaint alleges additional unfair treatment by Batz over the following months, although the allegations do not mention any type of discrimination. Plaintiff alleged that when she complained about some of these matters to Peter Barres in Human Resources, he was at first sympathetic, but later "totally changed his point of view" and did nothing to help her.

The complaint also alleges that in September 1995, Kodak announced an upcoming

force reduction. The announcement stated that employees would be terminated or retained based on their work performance. Plaintiff alleged that although her "records were all superb," she was terminated in December 1995.

The proposed amended complaint asserts five causes of action. The first is for sex discrimination under Title VII. Plaintiff alleges that prior to her termination, plaintiff held the position of Product Coordinator in Kodak's Health Services Division, and that after the layoff this title was given to Batz.

The second cause of action alleges age discrimination. Plaintiff alleges that she was subjected to disparate treatment because Cairns was given a promotion that plaintiff should have received. She also asserts a disparate impact theory, alleging that Kodak's reliance on performance evaluations to decide whom to lay off tended to favor younger employees "because younger employees who were in the process of climbing through the ranks of the Defendant's organization and had not peaked in their positions with the company received higher performance ratings than older employees who had reached or neared the peak of their advancement with the Defendant." Proposed Amended Complaint ¶ 30. Based on these allegations, the third cause of action asserts a claim of age discrimination under the HRL.

The fourth cause of action is based on the FMLA. Plaintiff alleges that she was not paid for overtime that she had accrued by working nights and weekends to make up for her absences to care for her husband. She also alleges that she was denied promotion due to those absences.

The fifth cause of action alleges that Kodak retaliated against plaintiff because of her complaints about Cairns and about certain changes in plaintiff's job title and duties. She alleges that Batz deliberately gave her low performance ratings because he knew that this would make plaintiff more vulnerable to termination in the event of a layoff.

## DISCUSSION

■ Although Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," a court may deny leave to amend where the amended pleading is considered futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994) ("Undue delay and futility of the amendment, among other factors, are reasons to deny leave"); *Picotte v. Community Child Care Ctr.,* 901 F.Supp. 588, 596 (W.D.N.Y.1995) (leave to amend may be denied when the amended pleading is considered futile). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *McNally v. Yarnall,* 764 F.Supp. 853, 855 (S.D.N.Y.1991).

■ Defendant contends that the proposed amendment in this case would be futile because the new claims that plaintiff seeks to raise are not reasonably related to the claims she asserted in her EEOC complaint. A district court may assume jurisdiction only over complaints containing allegations that are "reasonably related" to the allegations in the EEOC complaint. *See Stewart v. United States, I.N.S.,* 762 F.2d 193, 198 (2d Cir. 1985); *Donahue v. Pendleton Woolen Mills, Inc.,* 719 F.Supp. 149 (S.D.N.Y.1988). "A claim of discrimination is reasonably related to a charge filed with the EEOC if: a) a plaintiff presents it to the EEOC; or b) the EEOC investigates the claim; or c) the EEOC investigation of the original charge could be expected to encompass the claim." *Bennett v. New York City Dep't of Corrections,* 705 F.Supp. 979, 982 (S.D.N.Y.1989).

■ In the case at bar, plaintiff's EEOC complaint only alleged age discrimination and retaliation for complaining about age discrimination. There is no indication in the record that the EEOC investigated any other types of claims. Although plaintiff checked the box on the EEOC form for sex discrimination, she alleged no facts in that document to support such a claim. "[S]imple technicalities such as '[w]hat boxes . . . are checked on the EEOC form do not necessarily control the scope of a subsequent complaint." ' *Noreuil v. Peabody Coal Co.,* 96 F.3d 254, 259 (7th Cir.1996) (quoting *Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364, 368 (7th

Cir.1993)). Just. as a plaintiff would not be precluded from bringing an age discrimination claim simply because she checked the wrong box on her EEOC complaint (provided that she alleged facts supporting an age discrimination claim), the fact that McKinney checked the box for sex discrimination does not mean that she can now bring such a claim in this action even though there were no facts alleged in her EEOC complaint relating to sex discrimination. Were it otherwise, plaintiffs could circumvent the "reasonably related" rule altogether by simply checking every box on their EEOC form, even if they alleged no facts to support their claims. *See Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1403 (2d Cir.1993) (were courts to permit vague, general allegations of discrimination in EEOC complaints to define scope of EEOC investigation and subsequent lawsuit, "such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated").

This court, then, would have jurisdiction over plaintiff's proposed new claims only if the EEOC's investigation could have been expected to have encompassed the new claims as well. I find that none of plaintiff's proposed new claims pass that test, and, therefore, plaintiff's motion to amend must be denied as to those claims.

The claims of sex discrimination and FMLA violations are clearly outside the scope of the EEOC's investigation. Plaintiff's EEOC complaint made no mention of these matters whatsoever. In fact, plaintiff's allegation that a younger *female* employee was promoted over her would have tended to steer the EEOC away from investigating any possible sex discrimination. There is simply nothing in the record that suggests that the EEOC could reasonably have been expected to investigate claims of this nature, and to permit plaintiff to amend the complaint to assert these claims would be futile. *See Mathura v. Council For Human Services Home Care Services, Inc.*, No. 95 CIV. 4191, 1996 WL 157496 (S.D.N.Y. Apr. 2, 1996) (sex discrimination claim not reasonably related to race discrimination claim), *aff'd,* 107 F.3d 3 (2d Cir. Feb 12, 1997), *petition for cert. filed,*

No. 96–9021 (May 13, 1997); *Chevalier v. Presbyterian Hosp.*, No. 95 CIV. 2976, 1995 WL 758593 (S.D.N.Y. Dec. 26, 1995) (race discrimination claim not reasonably related to sex discrimination claim); *Nelson v. Cigna,* No. 3:95CV557, 1995 WL 848514 (D.Conn. Dec. 7, 1995) (race and sex discrimination claims not reasonably related to age and disability discrimination claims); *Baker v. National R.R. Passenger Corp.*, No. 94 CIV. 0856, 1994 WL 714279 *3 (S.D.N.Y. Dec. 22, 1994) (age discrimination claim not reasonably related to race discrimination claim).

■ The age discrimination claim based on a disparate impact theory presents a closer question, since it relates in general to the same type of discrimination as her age discrimination claim based on a theory of disparate treatment. Plaintiff's EEOC complaint did not mention a disparate impact theory, however, and in fact used the term of art, "disparate treatment." No fair reading of plaintiff's EEOC complaint suggests that she was raising any claim other than one for disparate treatment.

In support of her motion to add this claim, plaintiff relies upon *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir.1992). In *Gomes,* the Second Circuit held that the district court erred in dismissing a disparate impact claim on the ground that the plaintiff's EEOC complaint failed to give fair notice of the charge. The plaintiff's EEOC charge alleged that: the plaintiff was a Portuguese male; he had been denied certain promotions because of a rule requiring eight years of practical experience as a prerequisite to promotion; he believed he satisfied the eight-year rule; that less qualified employees were promoted to the positions; and the plaintiff was the only Portuguese employee in his job classification.

The Second Circuit stated that "[t]o be sure, this complaint most naturally support[ed] a claim of intentional discrimination." The court added, however, that "once the EEOC investigated the case and found that Gomes did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself," particularly in light of the plaintiff's allegation that people with less

experience than he (and thus less than eight years) had been promoted ahead of him. The court stated that "[g]iven that Gomes had also alleged that he was the only Portuguese in his job category, the EEOC could then have reasonably inquired as to whether this possibly unnecessary rule had a discriminatory impact on employees of Portuguese descent," and that therefore "an investigation of Gomes' disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim." *Id.* at 1334–35.

I believe, however, that *Gomes* is factually distinguishable from the case at bar. The EEOC complaint here could not reasonably have alerted the EEOC to investigate disparate impact. The significant factor in *Gomes* was that the plaintiff's factual allegations in his EEOC complaint, even though they did not expressly assert a disparate impact theory, nonetheless could reasonably have been expected to alert the EEOC to such a claim. The plaintiff had alleged that he was denied a promotion because of a rule that on its face appeared to be nondiscriminatory, but his allegations also suggested that there was no legitimate reason for the rule. Since the plaintiff was the only Portuguese in his job category, it was also obvious that the rule could have had a disparate impact on Portuguese employees.

In contrast, McKinney's EEOC charge gave no hint of any basis for a disparate impact claim. She alleged only that she "was discharged in retaliation for having complained about employment discrimination to management." She made no mention whatsoever of the process by which Kodak decided which employees to terminate.

Plaintiff contends that the EEOC would naturally have investigated the procedure by which she was terminated, and that once the EEOC discovered that employees' performance evaluations played a role in the process, it could reasonably inquired whether this method had a disparate impact on older employees. This is simply too far a stretch. To adopt plaintiff's position would allow virtually every disparate treatment claim to encompass a disparate impact claim as well. Where an employee alleges that her employer included her among the employees to be terminated during a layoff specifically because of her prior complaints of discrimination, it is not reasonable to expect the EEOC to examine the entire layoff process to see whether older workers as a group were more adversely affected than younger employees. That is particularly true here, since plaintiff alleges that Batz deliberately downgraded her performance evaluations to make her more vulnerable in a layoff. Plaintiff's age discrimination claim based upon a theory of disparate impact must therefore be dismissed as well. *See Noreuil,* 96 F.3d at 258 ("an administrative agency investigating a retaliation claim would almost certainly fail to inquire into a theory of disparate impact discrimination ..."); *Leisen v. City of Shelbyville,* 968 F.Supp. 409, 421–22 (S.D.Ind. 1997) (plaintiff's EEOC charges, which alleged disparate treatment and retaliation, made no reference to claim of disparate impact that plaintiff asserted in subsequent lawsuit, nor did they include factual allegations which might relate in any way to such a claim; mere fact that allegations of disparate treatment related to sex discrimination was not enough to bring disparate impact claim of sex discrimination within scope of EEOC charge); *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1029 (W.D.N.Y.1996) (dismissing plaintiff's disparate impact claim on ground that it was unrelated to his EEOC charge alleging workplace harassment); *Beth v. Espy,* 854 F.Supp. 735, 738 (D.Kan.1994) (denying plaintiff's motion to amend complaint to add claim of disparate impact, since plaintiff's EEOC charge of disparate treatment "fail[ed] to even mention the supervisory experience requirement which form[ed] the basis of her disparate impact claim"); *Blake v. City of Chicago,* No. 90 C 2967, 1991 WL 34634 *3 (N.D.Ill. Mar. 13, 1991) (disparate impact claim was not reasonably related to disparate treatment claim raised in EEOC charge).

Plaintiff's arguments that leave should be granted because the original complaint was filed pro se, and that the factual allegations in the original complaint put defendant on notice of the claims contained in the proposed amended complaint, are both beside

the point. This is not a matter of correcting prior inartful pleading by a pro se litigant. A pro se plaintiff is no more entitled to present unexhausted claims than a plaintiff who is represented by a lawyer. *See Shannon v. Ford Motor Co.,* 72 F.3d 678, 684–85 (8th Cir.1996) ("there is a difference between liberally reading a [pro se] claim which 'lacks specificity,' and inventing, *ex nihilo,* a claim which simply was not made" before the EEOC) (quoting *Pickney v. American Dist. Telegraph Co. of Arkansas,* 568 F.Supp. 687, 690 (E.D.Ark.1983)). Moreover, it is irrelevant whether the original complaint alleged matters relating to plaintiff's proposed new claims. To the extent that those allegations went beyond the scope of her EEOC charge, they cannot form the basis for new claims not reasonably related to her EEOC claims.

■ I also agree with Kodak that to the extent that plaintiff seeks to amend her complaint to add claims based on events occurring more than 300 days prior to the date of filing of her EEOC charge, plaintiff's motion must be denied. Under 29 U.S.C. § 626(d)(2), an ADEA action may not be commenced until 60 days after the filing of a charge with the EEOC, and the EEOC charge in turn must have been filed "within 300 days after the alleged unlawful practice occurred . . ." Failure to file a timely charge of age discrimination bars a subsequent action under the ADEA. *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 59 (2d Cir.1986) ("No civil action based on a claim of age discrimination may be brought in a federal court unless the plaintiff has timely filed his claim with the EEOC").

Plaintiff contends that her proposed claims based on events occurring prior to April 28, 1995 can be asserted on the theory that defendant's alleged actions constituted a continuing violation. Under the continuing-violation exception to the 300–day rule, where discriminatory acts occur pursuant to a continuing practice and policy of discrimination, the limitations period may be delayed until the last discriminatory act in furtherance of the policy. *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Where applicable, this rule allows claims of acts of discrimination to be deemed timely even though they would be untimely standing alone. *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

There is no simple test for determining whether conduct constitutes a continuing violation. Generally, the "exception applies to cases involving specific discriminatory policies or mechanisms . . ." *Id.; see, e.g., O'Malley v. GTE Service Corp.,* 758 F.2d 818 (2d Cir.1985) (enforcement of discriminatory mandatory retirement system is continuing violation). What is clear, though, is that a number of separate acts of discrimination do not automatically constitute a "continuing" violation. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert,* 10 F.3d at 53; *see also Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997) (discrete incidents of discrimination not related to an identifiable policy or practice do not amount to continuing violation unless they are specifically related and allowed to continue unremedied for so long as to constitute a discriminatory policy or practice).

Plaintiff's allegations in her proposed amended complaint are insufficient to establish a continuing violation. She alleges that in May 1995, her more important job duties were reassigned to other employees (though she does not allege that those employees were younger than she), and that she was left with more "trivial and ministerial" duties. Proposed Amended Complaint ¶ 20. The only other allegation in her proposed new ADEA claim relating to events occurring prior to April 29, 1995, is her allegation that throughout her employment, she was forced to correct errors made by Cairns, and that Batz praised Cairns's work despite plaintiff's complaints. These allegations show nothing more than discrete instances of alleged discrimination, and fall far short of the kind of policy or practice that must be shown to establish a continuing violation. *Lightfoot,* 110 F.3d at 907; *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.

1996). Evidence relating to these events may perhaps be admissible as background evidence, *see United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Bouman v. Block,* 940 F.2d 1211, 1218 (9th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991), but those events themselves cannot form the basis of plaintiff's claim.

I recognize, however, that the original complaint was filed pro se, and that plaintiff may wish to amend her complaint simply for reasons of form or to state her age discrimination claim in greater detail or with more precision. I will therefore grant plaintiff's motion in part, and grant her leave to amend her complaint to restate her claims of age discrimination based upon a theory of disparate treatment, and of retaliation under the ADEA.

### CONCLUSION

Plaintiff's motion to amend her complaint (Item 12) is granted in part and denied in part. Plaintiff's motion is granted only to the extent that she seeks to restate her claim of age discrimination on a theory of disparate treatment under the ADEA, and her existing claim of retaliation under the ADEA, based on events occurring on or after April 28, 1995. Plaintiff shall have fourteen (14) days from the date of entry of this Decision and Order to file an amended complaint. In all other respects, plaintiff's motion is denied.

IT IS SO ORDERED.